IN THE MATTER OF NED P. ROGOVOY, AN ATTORNEY-AT-LAW.

Argued April 23, 198—Decided October 8, 1985.

*William R. Wood*, Deputy Ethics Counsel, argued the cause for Office of Attorney Ethics.

*William F. Reilly, Jr.*, argued the cause for respondent (*Waltman & Reilly*, attorneys).

PER CURIAM.

This disciplinary proceeding arises out of three presentments filed by the District I Ethics Committee (the Ethics Committee), which concluded that respondent had committed unethical conduct and should be privately reprimanded. The Disciplinary Review Board (DRB) agreed with the Ethics Committee's finding of unethical conduct, but took a graver view of his misconduct toward the Committee in the course of his disciplinary proceedings. We, too, have previously observed firsthand his disrespect for the disciplinary process. On January 11, 1983, respondent failed to appear in answer to an Order to Show Cause why he should not be suspended. On that date, we suspended him, and he remains suspended to the present. At the conclusion of its hearing, the DRB recommended that respondent be suspended for two years retroactive to the date of his temporary suspension. We agree.

The DRB summarized the Ethics Committee's three presentments and recommendation for a private reprimand:

The presentments charge Respondent with failing to cooperate with the Ethics Committee, contrary to *DR* 1–102(A)(5) and (6) and failing to communicate regarding legal services performed, contrary to *DR* 1–102(A)(6). The Recommendation for a private reprimand charges Respondent with failing to

properly handle a legal matter entrusted to him, contrary to *DR* 6–101, and with failing to seek the lawful objectives of a client, contrary to *DR* 7–101.

The DRB Decision and Recommendation continues:

A. INGLE MATTER

"Mrs. Nancy Ingle paid Respondent a $250 retainer in January 1978 to file a lawsuit against the property owners of a single family dwelling she was purchasing which was destroyed by fire. She had entered into a contract in September 1976 to buy the dwelling for $22,000. She paid $4,000 down and was to pay $300 monthly. The house was extensively damaged by fire in January 1978. The contract balance as of January 1, 1978 was $16,375.88. Mrs. Ingle told Respondent the fire had been started by an employee of the property owner and she had a witness who saw the employee run out of the house. She later could not locate this witness. Respondent learned from the property owner that Mrs. Ingle had turned the dwelling into a boarding house in violation of the zoning ordinance and a boarder smoking in bed had started the fire. While Mrs. Ingle claimed Respondent told her he would handle the legal action on a contingency basis, Respondent maintained he informed her that an additional retainer was necessary before he would commence any legal action.

"Since Mrs. Ingle was listed among the payees on the insurance check for $17,256.09, the property owners initially offered her $500 to relinquish any rights she might have in the proceeds so the matter could be quickly resolved. She refused this. Several other offers were also rejected before it was increased to $5,750 on May 18, 1978, which she also rejected. Respondent had advised her to accept this but told her the decision had to be hers. Mrs. Ingle believed that the highest offer was only $4,000 and did not think this was sufficient. She had no insurance of her own on the property or its contents. After Mrs. Ingle refused to pay Respondent the additional retainer, he proposed returning the initial $250 retainer. She declined to accept it. In the interim, the municipality had initiated condemnation proceedings to raze the house. On

March 20, 1979, the property owners filed a civil action against Mrs. Ingle to expunge any ownership interest she might have in the property since the insurance proceeds were still not resolved. When Mrs. Ingle informed Respondent of this, he told her she had to file an answer or a default judgment could be entered against her. He informed her that his fee for handling this would be $1,000. A judgment against her was entered on February 1, 1980.

"Mrs. Ingle later filed an ethics complaint against Respondent, claiming he never advised her what action he was pursuing on her behalf and he had made himself unavailable to her when she attempted to contact him. Respondent did not cooperate with the Ethics Committee investigator who attempted to contact him to obtain his reply to the allegations. He cancelled appointments without explanation. A letter dated June 15, 1981 advised Respondent that if he did not contact the Ethics Committee investigator a complaint would be filed against him. There was no response until October 5, 1982 when Respondent's attorney informed the Committee that Respondent was retiring from the practice of law, had closed his office and was either going to graduate school or join the army. An answer was not filed to this complaint until March 9, 1983. At the Ethics Committee hearing, Respondent testified that he intentionally failed to file an answer to the complaint, maintaining that he felt it was unfair for an attorney to have to undergo the expense of responding to spurious complaints. He noted that earlier he had expended large sums of money to answer Ethics complaints which later were dismissed. The Ethics Committee dismissed Count One of the complaint, finding that Respondent had diligently and reasonably pursued the matter on behalf of Mrs. Ingle. Concerning Count Two, which pertained to Respondent's lack of cooperation with the Ethics Committee, the Committee concluded that he violated DR 1–102."

B. EVANS MATTER

"Respondent had been retained by the mother of Marvin F. Evans to resolve a property line dispute for her in Vineland.

She had paid him a $500 retainer on October 17, 1978. After the woman died, Respondent was contacted by Mr. Evans inquiring what action Respondent had taken so his mother's estate could be closed. Respondent failed to respond to his letters and telephone calls. Respondent did meet with Mr. Evans in an unexpected visit May 1, 1980 and gave him his file on the matter but said he would forward an accounting of expenses. Respondent failed to follow through on this. Mr. Evans then sought the assistance of the State Bar Association, but, again, Respondent failed to send an accounting of expenses or to respond. Mr. Evans then filed an ethics complaint against Respondent on January 19, 1981.

"An Ethics Committee investigator was unsuccessful in contacting Respondent. On November 3, 1982, an application was prepared to have Respondent suspended from the practice of law because of his failure to file an answer. This application noted that Respondent was informed on November 23, 1981 to file an immediate answer or that suspension proceedings would be initiated. Respondent's attorney then sought additional information and the suspension application was withdrawn. However, no answer was filed by Respondent until March 9, 1983. At the April 2, 1984 Ethics Committee hearing, Respondent maintained he had not filed an answer to the complaint because he was satisfied, in his own mind, that he had not caused any damage to his client. He testified that he was 'rebelling against the Ethics Committee.' In his belated answer, he stated that since Mr. Evans was not his client he felt he owed him no response or accounting. The Ethics Committee found there was no credible explanation as to the variance in Respondent's testimony and his answer to the complaint as to why he failed to communicate with the Ethics Committee investigator in 1981 other than Respondent was having personal problems and intentionally did not respond. The District Ethics Committee concluded that Respondent failed to cooperate with the District Ethics Committee investigator and violated *DR* 1–102(A)(5) and (6). Respondent's failure to respond to the

inquiries by Mr. Evans violated *DR* 1–102(A)(6). It found no violation of *DR* 6–101(a)(1) and (2), negligent handling of matters entrusted to an attorney, and *DR* 7–101(A)(1) and (2), failure to seek lawful objectives of a client or to complete a contract of employment. The District Ethics Committee recommended that Respondent be suspended from the practice of law for a period which would allow an investigation to determine his fitness to continue in the practice of law."

## C. GRANATE MATTER

"Respondent was retained by James Granate who was arrested January 29, 1979 on a charge of extortion. After Mr. Granate's release on bail, Respondent interviewed him and prepared for the anticipated preliminary hearing. He also interviewed the investigating police officer, the victim, and listened to the tape recording of the allegedly incriminating conversation. The scheduled preliminary hearing was twice postponed. Respondent informed Mr. Granate that he believed he was in substantial difficulty concerning the charge and not to press the matter. According to Respondent, Mr. Granate admitted his guilt. Respondent advised him that since the investigating police officer was also under investigation the better course of action would be to let the matter remain as it was. Respondent informed Mr. Granate that he could retain another attorney if he desired. He even recommended an attorney to him. Respondent explained to Mr. Granate that he did not believe the delay would be prejudicial to his defense. He was concerned that if he actively pursued the matter, the county prosecutor would schedule the matter for trial. However, Mrs. Granate, who had not been aware of all the facts because her husband asked Respondent not to tell her, kept pressing Respondent to have the charge dismissed. Mr. Granate had told his wife he was innocent of the charge.

"On October 19, 1979 Respondent wrote to the presiding municipal court judge requesting that the charge be dismissed. A copy of this letter was sent to the county prosecutor with

whom Respondent later discussed the case. He also discussed the matter with a county detective who said he would look into it. While Respondent was familiar with the court rules on having an indictable criminal charge dismissed, he hoped the municipal court judge could 'use his influence with the prosecutor' in having this charge dismissed. During this time period, Respondent handled other legal matters for the Granates, estimating that he consumed a total of fifteen hours on them.

"When Respondent was informed that Mr. Granate was retaining another attorney, he gave Mrs. Granate his file on the case but would not refund any of the retainer. That attorney filed a motion and the charge was dismissed. Mr. Granate filed an ethics complaint against Respondent on September 11, 1980, charging that he did little or no work on his case. Respondent did not cooperate with the District Ethics Committee investigator and did not immediately file an answer. He felt he had not done anything improper and did not see any reason to cooperate. The District Ethics Committee found no violation of Respondent's representation of his client, concluding that the conduct engaged by Respondent represented his strategy in handling the case. Concerning Respondent's lack of cooperation with the District Ethics Committee investigation, the Committee found that Respondent deliberately refused to cooperate and violated *DR* 1–102(A)(5) and (6)."

### D. KLAWITTER MATTER

"Respondent was retained by Cathy A. Klawitter on June 12, 1979 to handle a legal separation from her husband. She told Respondent that her husband would pay $50 a week support and would deed the family home to her. Respondent informed her then and again in November to tell her husband that he should have his own attorney. Respondent maintained he advised her to talk to her husband about a separation agreement instead of a separate maintenance action. He did not pursue the deed transfer because he wanted to work on a property settlement agreement package. When Mrs. Klawitter informed

him that her husband had stopped making support payments in either March or April of 1980, and she was having financial problems, he informed her that it was now necessary to take action on the support. He maintained that he had dictated a complaint but he was not able to locate it. It was not in his file. Respondent denied the allegation that between May and August 1980 Mrs. Klawitter had attempted to contact him but he never returned her calls. Respondent contended that he tried to reach her but was unsuccessful. Dissatisfied with Respondent's services, Mrs. Klawitter advised him she was going to proceed with a *pro se* divorce and wanted a refund. He replied that he would review his records to determine if she was entitled to this. Respondent admitted that he was aware of her financial problems and of the fact that her situation was critical when her husband stopped making the $50 per week support payments and that he attempted to have an early court hearing conducted. He acknowledged that Mrs. Klawitter was able to straighten out the hearing matter within a few days after she went directly to the courthouse herself. She filed an ethics complaint against him after he refused to return the $240 she paid him. Her divorce was never finalized.

"The Ethics Committee found Respondent's explanation of the problems concerning his incomplete files being related to his 'alcoholic' secretary was not a satisfactory response to the problems that arose in this matter, adding that Respondent did not follow-up on the numerous telephone calls although he knew Mrs. Klawitter was in a critical financial situation. The Committee expressed concern about the fact that there were not records in his files of letters, complaints, affidavits or related documents which he alleged were prepared. The District Ethics Committee concluded that Respondent violated *DR* 6–101 in that he failed to properly handle and neglected a legal matter entrusted to him in such a manner that his conduct constituted gross negligence. It also held that Respondent violated *DR* 7–101 in that he knowingly failed to seek the lawful objectives of his client through reasonably available

means. It recommended a private reprimand for these acts of misconduct."

Based upon the preceding findings, the DRB concluded:

"Upon a review of the full record, the Board is satisfied that the conclusions of the District Ethics Committee in finding Respondent guilty of unethical conduct are fully supported by clear and convincing evidence.

"In the cases before this Board, Respondent's misconduct in the main consisted of failing to cooperate with the District Ethics Committee when the various charges were being investigated. He intentionally failed to file answers to complaints and failed to meet with Ethics Committee investigators who inquired into the allegations. He sought to rationalize his behavior by maintaining that in his conscience he was satisfied he had not injured these clients. Respondent felt indignant that he had to expend money and time to defend what he considered were complaints without merit. He was, as he stated it, rebelling against the District Ethics Committee.

"Respondent was a rebel without a cause. He myopically viewed the profession of law as a business. It is a privilege and with every privilege are obligations attendant thereto. The practice of law is a profession dedicated to serve others. An important part of this service is communication, keeping the client informed in language the client can readily understand. Equally important is accountability, not only to the client, but also to those charged with the duty of investigating ethics complaints.

"When an attorney shows disrespect to an Ethics Committee, he shows disrespect to the state Supreme Court because the committee is an arm of the court. *In re Grinchis*, 75 *N.J.* 495, 496 (1978). An attorney is obligated to be candid and to fully cooperate with an Ethics Committee investigation. *In re Gavel*, 22 *N.J.* 248, 263 (1956).

"Not only was Respondent disrespectful to the Ethics Committee investigating these complaints against him, he also was

directly disrespectful to the Supreme Court. Respondent did not appear on the January 11, 1983 return date of an order to show cause to determine if he should be suspended from the practice of law. The Board finds that Respondent violated DR 1–102(A)(5) and (6) by failing to cooperate with the Ethics Committee. It also finds that Respondent violated DR 1–102(a)(6) by failing to respond to inquiries from a client regarding what legal services he had performed for the client's mother. Respondent also violated DR 6–101 by improperly handling and neglecting the matrimonial matter entrusted to him by Mrs. Klawitter and violated DR 7–101 by failing to seek the lawful objectives of this client.

"The severity of discipline to be imposed must comport with the seriousness of the ethical infractions in light of all the relevant circumstances. *In re Nigohosian*, 88 *N.J.* 308, 315 (1982). Respondent's contumacious conduct has resulted in a suspension of at least two years because of the number of complaints that had to be investigated. He now acknowledges that an attorney has a duty to cooperate in such investigations. The Board finds no merit in Respondent's defenses that he was experiencing severe personal problems, such as the dissolution of his marriage and law partnership. Therefore, the Board, by a requisite majority, recommends that Respondent be suspended from the practice of law for two years, retroactive to the date of his temporary suspension.

"The Board also recommends that Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs."

Our independent review of the record leads us to conclude that the factual findings of the DRB are correct. We adopt those findings and the recommendation of the DRB that respondent be suspended for two years, retroactive to the date of his temporary suspension. To that conclusion we add that Respondent's conduct throughout the disciplinary proceedings has demonstrated poor judgment and a lack of responsibility. Ac-

cordingly, as a condition to reinstatement, we direct that respondent present psychiatric evidence of his ability to return to the practice of law. Respondent's failure to cooperate with the Ethics Committee and to appear before this Court, when combined with his failure to recognize his responsibilities to his clients, demonstrates that he is not sufficiently responsible at this time to practice law as a single practitioner. He needs supervision. Consequently, respondent's reinstatement is, until further order of this Court, subject to the further condition that his practice be subject to the supervision of a preceptor to be selected by the DRB. The preceptor shall submit quarterly reports to the Office of Attorney Ethics concerning the status of respondent's cases and trust account. Finally, respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs.

SO ORDERED.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

### ORDER

It is ORDERED that NED P. ROGOVOY of MILLVILLE, who was admitted to the Bar of this State in 1973, is hereby suspended from the practice of law for a period of two years and until further order of this Court, effective January 11, 1983; and it is further

ORDERED that respondent's restoration to the practice of law is conditioned upon his submission of psychiatric evidence that establishes his ability to return to the practice of law; and it is further

ORDERED that, pending further order of this Court, respondent's restoration to the practice of law will be conditioned upon his supervision by a preceptor to be selected by the

Disciplinary Review Board, said preceptor to submit quarterly reports to the Office of Attorney Ethics on the status of respondent's cases and trust account, and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.