760 A.2d 1108

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Howard J. FEZELL.

Misc. AG No. 34, Sept. Term, 1999.

Court of Appeals of Maryland.

Oct. 13, 2000.

236

Melvin Hirshman, Bar Counsel, for the Attorney Grievance Com'n of Maryland.

Howard Fezell, Frederick, pro se.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

The Attorney Grievance Commission, through Bar Counsel, charged Howard J. Fezell, Respondent, with violations of Maryland Rules of Professional Conduct 1.1, Competence;[1] 1.3, Diligence;[2] 1.4, Communication;[3] 3.2, Expediting Litigation;[4] and 8.1(b), Bar Admission and Disciplinary Matters.[5]

---

1. Rule 1.1 (Competence) provides as follows:

   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

2. Rule 1.3 (Diligence) provides as follows:

   A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Rule 1.4 (Communication) provides as follows:

   (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

4. Rule 3.2 (Expediting Litigation) provides as follows:

   A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

5. Rules 8.1(b) (Bar and Disciplinary Matters) provides in relevant part as follows:

Pursuant to Maryland Rule 16–709(b), we referred the charges to Judge John H. Tisdale of the Circuit Court for Frederick County to conduct a hearing and make findings of fact and proposed conclusions of law.

## I.

Pursuant to an order of this Court, Judge Tisdale held an evidentiary hearing on January 12, 2000. Respondent asserted, in a Motion to Dismiss, that, because Rule 8.1 prohibits knowingly failing to respond to a lawful demand for information from a disciplinary authority, any allegation that he violated Rule 8.1 must state that a lawful demand was made. He argued that since Bar Counsel's Petition did not state that a lawful demand was made, only that Respondent failed to respond to requests from the Attorney Grievance Commission, those portions of the Petition relating to a violation of Rule 8.1 should be dismissed. Respondent further argued that the only method open to Bar Counsel to make a lawful demand was to issue a subpoena.

Bar Counsel responded that the subpoena power is intended to allow Bar Counsel to obtain documents from third parties not under the Attorney Grievance Commission's jurisdiction. Moreover, the subpoena power is discretionary, not mandatory, and is therefore not the sole method available to Bar Counsel to request information.

Denying the Motion to Dismiss, Judge Tisdale concluded that the rule empowering Bar Counsel to issue subpoenas was intended primarily to allow Bar Counsel to obtain information from those who are not parties to the case and was not meant

---

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \* \* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

to be Bar Counsel's sole method of effecting a lawful demand upon an attorney. Judge Tisdale filed an Opinion and Order setting forth his findings of fact and conclusions of law. He concluded that Respondent had violated Rules 1.3, 1.4, 3.2, and 8.1(b) of the Maryland Rules of Professional Conduct. Judge Tisdale further concluded that Respondent did not violate Rule 1.1. The Opinion and Order reads as follows:

"This matter came before the court pursuant to an order of the Court of Appeals of Maryland. On January 12, 2000, this court conducted a hearing in accordance with Maryland Rule 16–710 regarding a petition filed by the Attorney Grievance Commission (hereinafter the "Commission") concerning Howard J. Fezell (hereinafter the "Respondent"). The court took the matter *sub curia.*

"The Petition filed by the Commission concerns violations of professional ethics alleged in complaints of two clients of Respondent and his inadequate response to resulting inquiries of Bar Counsel. The Commission alleged violation of Maryland Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 3.2 (Expediting Litigation), and 8.1(b) (Bar Admission and Disciplinary Matters) in the Szarvas matter, along with violation of Rule 8.1(b) in the Weller complaint.

"At the hearing, Respondent acknowledged that he had not done a good job in handling the Szarvas divorce. As for his failure to comply with the Commission's requests for information, Respondent argued that nothing in the Maryland Rules compelled a reply. Respondent claimed that the letters from the Commission regarding the Szarvas and Weller complaints were 'requests' for information and, as such, did not qualify as 'lawful demands' within the language of Rule 8.1(b). Respondent argued that since the Commission has subpoena power under Maryland Rule 16–704(c), a subpoena must be issued in order to make a 'lawful demand.'

"In accordance with Maryland Rule 16–711(a), the following findings of fact have been established by clear and convincing evidence:

## FINDINGS OF FACT

"Respondent was admitted to practice law in the State of Maryland on June 21, 1978. Prior to the complaints filed in this matter, Respondent had never been the subject of public discipline.

### Complaint of Mary L. Szarvas

"In May 1994, Mary L. Szarvas paid Respondent a fee of $600.00 and retained him to obtain a divorce on the ground of mutual and voluntary separation which commenced November 6, 1993. On May 19, 1994, Respondent filed a complaint for a limited divorce with a copy of the parties' separation agreement attached. Respondent personally served the summons on Mr. Szarvas on June 2, 1994. When Mr. Szarvas did not respond, Respondent obtained an order of default on November 18, 1994.

"On April 26, 1995 and again on June 14, 1995, Respondent filed supplemental complaints for absolute divorce. On each occasion, a copy of the complaint was mailed to Mr. Szarvas, but no summons was issued or served upon the defendant.

"Ms. Szarvas, her sister Linda Main, and Respondent appeared before a standing examiner to have testimony taken on July 7, 1995 pursuant to Rule 2–542. Mr. Szarvas did not appear. On July 21, 1995, Respondent filed the transcript of the testimony with the Circuit Court for Frederick County. However, this testimony was not ripe since it was taken prior to an answer or entry of any order of default regarding the supplemental complaints for absolute divorce.

"On November 15, 1995, Respondent filed a request for order of default which was denied because service had not been effected on the defendant as to the supplemental complaints pursuant to Rule 1–321(b).

"On December 6, 1995, Respondent filed another supplemental complaint for absolute divorce and mailed a copy to

Mr. Szarvas. Mr. Szarvas did not respond to the supplemental complaint.

"On April 5, 1996, Respondent filed a supplemental complaint for absolute divorce. A writ of summons was issued. There is no record of service of the summons and supplemental complaint.

"On December 6, 1996, Respondent requested the Clerk of Court to reissue a summons for private service upon the defendant. On December 22, 1996, Mr. Szarvas was served, but he never filed a answer. On June 16, 1997, the court entered an order of default.

"Testimony was taken at Respondent's law office on June 20, 1997 before a standing examiner, and a transcript of the testimony was filed with the court on November 4, 1997. Ms. Szarvas learned from the clerk's office that the June 20, 1997 testimony had become stale since it was not filed within ninety (90) days of the taking of testimony.

"After June 20, 1997, Ms. Szarvas left telephone messages and notes at Respondent's office frequently. He did not reply except to instruct her to attend and give testimony before an examiner on two later occasions.

"The Respondent instructed Ms. Szarvas to come to his office to give testimony on January 30, 1998 at 4:00 p.m. Ms. Szarvas and Ms. Main waited at Respondent's office on this date from 3:55–4:30 p.m., but Respondent never arrived.

"On February 10, 1998, Ms. Szarvas filed a complaint against Respondent with the Commission.

"On February 18, 1998, the Commission sent a letter to Respondent, enclosing a copy of Ms. Szarvas's complaint and requesting a response within fifteen (15) days. Respondent did not reply to this request.

"On March 2, 1998, testimony in the Szarvas matter was again taken before a standing examiner. The Respondent filed the transcript of the testimony with the court on March 5, 1998.

"On March 12, 1998, the Commission sent a second notice to Respondent regarding the Szarvas complaint, requesting

a reply within ten (10) days of receipt. This letter was sent by certified mail, and the return receipt was signed by Respondent. Respondent claimed he did not receive the first notice and requested another copy of the complaint.

"On March 25, 1998, the Commission sent Respondent a copy of the Szarvas complaint, and requested a response within fifteen (15) days. In return, Respondent sent the Commission a copy of the judgment of absolute divorce entered on March 30, 1998, but made no further reply.

"On August 25, 1998, Commission investigator John Reburn called Respondent and left a message requesting a return call. Respondent did not return this call.

"On August 26, 1998, Mr. Reburn wrote to Respondent requesting a meeting to discuss the complaint and review the file of Mary Szarvas. Respondent did not reply to this request.

"On September 8 and 9, 1998, Mr. Reburn called Respondent and left messages requesting a return call to which Respondent did not reply.

"On September 9, 1998, Mr. Reburn left a business card at Respondent's law office with a note requesting a phone call.

"On September 10, 1998, Mr. Reburn contacted Respondent by telephone and requested a meeting. Respondent declined this request and chose to discuss the matter by telephone. In this conversation, Respondent acknowledged that testimony in the Szarvas matter became stale and had to be retaken. Additionally, Respondent explained that it took four years to obtain Ms. Szarvas's divorce because Mr. Szarvas often moved and was therefore difficult to serve.

"Ms. Szarvas was aware of Mr. Szarvas's address throughout Respondent's representation.

## CONCLUSIONS OF LAW

"By his conduct in handling the divorce of Mary Szarvas, respondent has violated Maryland Rules of Professional Conduct 1.3, 1.4, 3.2, and 8.1(b).

"Respondent violated Rule 1.3 in that it took him four years to obtain a divorce for Ms. Szarvas. Respondent's repeated failure to file testimony timely and to serve the defendant demonstrates a lack of reasonable diligence. Although Respondent claims that Mr. Szarvas was difficult to locate, the defendant's address could have been obtained from Respondent's client throughout the representation.

"The court finds that Respondent violated Rule 1.4 through his pervasive failure to inform Ms. Szarvas of the status of her case. Throughout the four years of representation, Ms. Szarvas never received anything in writing from Respondent, and he only called her to schedule the taking of testimony. Ms. Szarvas was left unaware of the status of her case, and had to obtain information regarding her divorce from the clerk's office.

"Respondent has violated Rule 3.2 by failing to obtain an uncontested divorce within four years. Respondent's repeated failure to serve the defendant throughout the four years of representation unreasonably delayed Ms. Szarvas's divorce. Testimony had to be taken on three separate occasions due to Respondent's errors. As a result, court time was spent unnecessarily in filing and reviewing inappropriate pleadings and testimony submitted by the Respondent.

"Respondent has violated Rule 8.1(b) by failing to respond to the February 18, 1998 and March 12, 1998 letters from the Commission requesting information regarding the Szarvas complaint. In addition, Respondent's limited cooperation with investigator John Reburn frustrated the Commission's investigation of the Szarvas matter.

"Respondent's argument that Bar Counsel's requests for information do not qualify as 'lawful demands' in the language of 8.1(b) is without merit. Rule 16–704 gives Bar Counsel subpoena power, but the issuance of a subpoena does not therefore become Bar Counsel's sole means of making a 'lawful demand.' Even a cursory reading of Rule 16–704(c) demonstrates that subpoena power is provided to Bar Counsel to obtain information from those who are not

parties to a specific complaint. The attorney against whom a complaint has been filed is entitled to *notice* of a subpoena; it is not to be served on him. Rule 16–706 charges Bar Counsel with the duty to investigate attorneys, and Bar Counsel's letters and Mr. Reburn's investigation were both in accordance with this duty. Respondent's failure to respond to the inquiries has impaired Bar Counsel's ability to fulfill this obligation.

"Of equal or greater concern is Respondent's disregard of the spirit and intent of the Rules of Professional Conduct. The preamble to those rules notes that '[t]he legal profession's relative autonomy carries with it special responsibilities of self-government.' Those responsibilities can only be carried out with candor and cooperation by each lawyer when dealing with the Attorney Grievance Commission. Respondent resisted the efforts of the Commission to investigate the complaints and then attempted to justify his recalcitrance by a formalistic interpretation of procedural rules.

"The court does not find any violation of Rule 1.1. The Commission has not presented clear and convincing evidence that Respondent's handling of the Szarvas matter demonstrated a lack of legal knowledge, skill, or preparation. Although the Respondent took testimony prematurely on one occasion and allowed testimony to become stale on another, such errors do not rise to the level of incompetent representation.

### Complaint of Kerry D. Weller

"On June 19, 1998, Kerry D. Weller retained Respondent to retrieve guns and ammunition that had been seized in a police raid.

"Mr. Weller and Respondent agreed to an advance fee of $500.00, and Mr. Weller gave Respondent a check for $250.00. Two weeks later, Mr. Weller gave Respondent another check for $250.00 which Respondent never deposited. Mr. Weller stopped payment on the second check.

"On June 26, 1998, Respondent sent a letter to Officer Walter S. Dacuycuy in an attempt to retrieve Mr. Weller's firearms.

"Mr. Weller attempted to call Respondent several times but received no response. When Mr. Weller was able to contact Respondent, he requested that Respondent deposit his second retainer check and retrieve his firearms. Respondent informed Mr. Weller that he would deposit the check and that he was awaiting a response from Officer Dacuycuy regarding the firearms.

"In September 1998, Mr. Weller retrieved the firearms himself.

"On September 14, 1998, the Commission received a complaint from Mr. Weller based on Respondent's failure to deposit his second retainer check or retrieve his firearms.

"On October 16, 1998, James P. Botluk, Assistant Bar Counsel, wrote to Respondent regarding Mr. Weller's complaint and requested a response in writing within fifteen (15) days. Respondent did not reply.

"On November 17, 1998, Melvin Hirshman, Bar Counsel, wrote to Respondent and enclosed the October 16, 1998 letter. Mr. Hirshman requested a reply from Respondent within ten (10) days. The letter was sent by certified mail, and the return receipt was signed by Respondent. Respondent did not reply to this request.

## CONCLUSIONS OF LAW

"Respondent has violated Rule 8.1(b) through his failure to reply to the October 16 and November 17, 1998 letters regarding Mr. Weller's complaint. This court finds that Bar Counsel's letters qualify as 'lawful demands.' Therefore, Respondent's knowing failure to respond to Bar Counsel's inquiries of Mr. Weller's complaint violates Rule 8.1(b)."

## II.

■ Before this Court, Respondent excepts to Judge Tisdale's findings that he violated Rule 8.1(b) and moves to dismiss the Petition on the grounds that it fails to state a cause of action upon which relief can be granted. His argument is two-fold. First, Respondent argues that, because Bar Counsel has not alleged in the Petition that a lawful demand for information was made upon Respondent, he has not set forth specific facts that would state a cause of action upon which relief could be granted, and, thus, the Petition must be dismissed. Second, Respondent contends that, in order to issue a lawful demand for information, Bar Counsel must issue a subpoena. Since Bar Counsel never issued a subpoena, he never made a lawful demand, and Rule 8.1(b) has not been violated.

### A. Failure to State a Claim

We shall first address Respondent's argument that the Petition fails to state a claim upon which relief can be granted. As to the complaint of Mary Szarvas, the Petition states: "Respondent did not respond to the Attorney Grievance Commission when requested to respond to the complaint of Mary Szarvas. Respondent took the position that there was no rule requiring a response nor anything in the Maryland Annotated Code or in any of its various court rules that gives the Attorney Grievance Commission authority to make demands for a response to a complaint." As to the complaint of Kerry D. Weller, the Petition states: "The Respondent, however, again took the position in a response to a request for information from Bar Counsel about the complaint that he did not have to respond to a demand for information from a disciplinary authority and therefore refused to do so."

■ Respondent's Motion to Dismiss the charges alleging a violation of Rule 8.1(b) on the ground that the Petition is insufficient because it fails to allege that Bar Counsel made a lawful demand for information is denied. An attorney in a disciplinary hearing is "entitled to procedural due process, which includes fair notice of the charge." *In re Ruffalo*, 390

U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). *See* Maryland Rule 16–709. The Petition clearly advised Respondent of the precise nature of the charges against him and set forth details sufficiently clear and specific reasonably to enable him to prepare a defense to the charges.

■ Maryland Rule 16–709 addresses charges brought by Bar Counsel in disciplinary proceedings. Section 709(c) requires that "[t]he charges shall be in writing and shall be sufficiently clear and specific reasonably to inform the attorney proceeded against of any misconduct charged and of the basis of any allegation that he is incompetent." To be sufficient, a petition must be intelligible and sufficiently informative to allow an accused attorney to prepare a defense. *See Attorney Grievance v. Alison,* 349 Md. 623, 641, 709 A.2d 1212, 1221 (1998) (holding that charges were sufficiently clear and specific to inform attorney of misconduct charged even though allegations did not specifically state that a cause of action was "frivolous," but merely cited the rule number and presented facts to support the allegation). So long as the petition informs the attorney of the misconduct charged in language which is clear and sufficiently specific to enable the attorney to prepare a defense, the charges need not be set out in any particular form. *See Bar Ass'n v. Cockrell,* 270 Md. 686, 692, 313 A.2d 816, 819 (1974) (holding that, while the [predecessor] rule requires that the charges be sufficiently clear and specific so as to enable the attorney to prepare a defense, no certain form or detail is required).

The Petition cited Rule 8.1 and presented facts to support the alleged misconduct. Bar Counsel alleged that Respondent refused to respond to requests for information from the Commission. While neither allegation contained Respondent's talismanic phrase, "lawful demand," the allegations were sufficiently clear and specific reasonably to inform Respondent of the alleged misconduct and to allow him to prepare a defense.

### B. Subpoena Argument

■ Respondent argued at the hearing before Judge Tisdale, and makes the same argument before this Court, that,

because Bar Counsel is empowered to issue subpoenas pursuant to Maryland Rule 16–704(c), only a subpoena would qualify as a "lawful demand" under Rule 8.1, and any letters that he received were merely *requests* for information. Judge Tisdale rejected Respondent's argument and concluded that the subpoena power under Rule 16–704 was intended to enable Bar Counsel to obtain information from third parties not subject to the authority of the Attorney Grievance Commission. He concluded that the letters received by Respondent qualified as "lawful demands." We agree and deny Respondent's Motion to Dismiss.

In construing a rule, we apply principles of construction similar to those used to construe a statute. *See Holmes v. State,* 350 Md. 412, 422, 712 A.2d 554, 558 (1998). We seek to discern legislative intent, beginning with an examination of the text of the rule. *See State v. Harrell,* 348 Md. 69, 80, 702 A.2d 723, 723 (1997). We give the words their ordinary and usual meanings. *See Holmes,* 350 Md. at 412, 712 A.2d at 558. If the language is clear and unambiguous, our analysis ends. *See id.* Even where the language is clear, however, we may look to other sources that bear on the purpose or intent of the rule. *See State v. Wiegmann,* 350 Md. 585, 592, 714 A.2d 841, 844 (1998).

Maryland Rule 8.1(b) provides in pertinent part as follows: An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \* \* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

On its face, this Rule does not define a lawful demand from a disciplinary authority. Maryland Rule 8.1(b) is identical, how-

ever, to Rule 8.1 of the ABA Model Rules of Professional Conduct. Universally, the ABA Model Rule has been interpreted to require an attorney to respond to letters or telephone calls from the disciplinary authority without the use of a subpoena. *See, e.g., In re Evans,* 661 P.2d 171, 172–74 (Alaska 1983); *In re Secrist,* 180 Ariz. 50, 881 P.2d 1155, 1157–58 (1994); *Bach v. State Bar,* 52 Cal.3d 1201, 278 Cal.Rptr. 371, 805 P.2d 325, 327–29 (1991); *In re Rich,* 559 A.2d 1251, 1254 (Del.1989); *In re Washington,* 489 A.2d 452, 456–57 (D.C. 1985); *The Fla. Bar v. Grosso,* 647 So.2d 840, 840–41 (Fla. 1994); *In re Royal,* 29 Ill.2d 458, 194 N.E.2d 242, 243 (1963); *Committee on Prof'l Ethics and Conduct of the Iowa State Bar Ass'n v. Peterson,* 524 N.W.2d 176, 177–79 (Iowa 1994); *In re Jackson,* 252 Kan. 219, 843 P.2d 257, 259 (1992); *Kentucky Bar Ass'n v. Blackburn,* 883 S.W.2d 877, 877 (Ky.1994); *In re McCoy,* 375 N.W.2d 471, 471 (Minn.1985); *In re Staab,* 719 S.W.2d 780, 783–84 (Mo.1986); *State ex rel. Neb. State Bar Ass'n v. Kirshen,* 232 Neb. 445, 441 N.W.2d 161, 166–70 (1989); *State Bar of Nev.,* 98 Nev. 599, 655 P.2d 529, 530 (1982); *In re Rogovoy,* 100 N.J. 556, 498 A.2d 769, 773–74 (1985); *In re Cardoso,* 200 A.D.2d 42, 612 N.Y.S.2d 446, 446–49 (1994); *In re Lince,* 200 N.W.2d 56, 58 (N.D.1972); *In re Gastineau,* 317 Or. 545, 857 P.2d 136, 142 (1993); *In re Chastain,* 316 S.C. 438, 450 S.E.2d 578, 580 (1994); *In re Clark,* 99 Wash.2d 702, 663 P.2d 1339, 1341–42 (1983); *Committee on Legal Ethics of W. Va. State Bar v. Keenan,* 192 W.Va. 90, 450 S.E.2d 787, 789–91 (1994); *In re Norlin,* 104 Wis.2d 117, 310 N.W.2d 789, 795 (1981).

This Court has a long history of holding that an attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information.[6] *See, e.g., Attorney Grievance v. Tolar,* 357 Md. 569, 582, 745 A.2d 1045, 1052 (2000) (holding that failing to respond to letters from Bar Counsel requesting a response constituted a violation of Rule

---

**6.** The attorney's duty to respond is qualified by the privilege against self-incrimination. *See* Maryland Rule 1.6, Confidentiality of Information. *See also Spevack v. Klein,* 385 U.S. 511, 516, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).

8.1); *Attorney Grievance v. Briscoe,* 357 Md. 554, 562–64, 745 A.2d 1037, 1043 (2000) (finding violation of Rule 8.1 where attorney failed to appear with documents at a hearing, despite receiving "notices" of the dates); *Attorney Grievance v. Brown,* 353 Md. 271, 286–87, 725 A.2d 1069, 1076 (1999) (finding violation of Rule 8.1 where counsel failed to respond to three letters sent by Bar Counsel requesting information); *Attorney Griev. Comm. v. Milliken,* 348 Md. 486, 500–01, 704 A.2d 1225, 1232 (1998) (holding that failure to respond to Bar Counsel's letters is a violation of Rule 8.1); *Attorney Griev. Comm. v. Hallmon,* 343 Md. 390, 407–08, 681 A.2d 510, 519–20 (1996) (holding that attorney violated Rule 8.1 when he refused to meet with an Assistant Bar Counsel to discuss an investigation after being requested to do so in a letter from the Assistant Bar Counsel); *Attorney Griev. Comm. v. Kenney,* 339 Md. 578, 587, 664 A.2d 854, 858 (1995) (holding that attorney violated Rule 8.1 when he failed to provide records of his escrow accounts and other information after being requested to do so by Bar Counsel); *Attorney Griev. Com'n v. David,* 331 Md. 317, 321–22, 628 A.2d 178, 181 (1993) (holding that failing to respond to two written inquiries by the Attorney Grievance Commission regarding a filed complaint constituted a violation of Rule 8.1); *Attorney Griev. Comm'n v. Nisbett,* 316 Md. 464, 470, 560 A.2d 18, 21 (1989) (holding that attorney's failure to respond to Bar Counsel's numerous requests for information in connection with complaints filed against the attorney violated Rule 8.1). In all of the cases above, Bar Counsel sent letters, not subpoenas, to request information or notify attorneys of investigatory hearings, and, in every case, this Court held that a lawful demand was made. Significantly, Respondent does not cite a single authority for the proposition that Bar Counsel must issue a subpoena to make a lawful demand.

Maryland Rule 16–704, formerly Rule BV 4, concerns Bar Counsel. Bar Counsel is empowered, *inter alia,* to investigate all matters involving possible misconduct called to his attention and to prosecute disciplinary cases. *See* Rule 16–704(b)(i). Rule 16–704(c)(1) provides as follows:

After a complaint has been filed, and with the prior written approval of the Chair or Acting Chair of the Commission, Bar Counsel may issue a subpoena to compel the production of designated documents or other tangible things at a time and place specified in the subpoena. In addition to giving any notice required by law, Bar Counsel shall provide prompt notice of the issuance of the subpoena to the attorney against whom the complaint has been filed. The notice shall be personally delivered or sent by regular mail to the attorney's last known address and to the attorney's address contained in the records of the Clients' Security Trust Fund, if different.

Rule 16–704(c)(2) sets out the procedure for the attorney or the person served with the subpoena to object to the subpoena, as well as Bar Counsel's authority to compel compliance with the subpoena. Finally, Rule 16–704(c)(3) provides that, "to the extent practicable, a subpoena shall not divulge the name of the attorney against whom the complaint has been filed." Bar Counsel is charged with investigating each complaint that an attorney has committed misconduct or incompetency. *See* Rule 16–706.

Rule BV4, the predecessor to Rule 16–704, was amended in 1992 to grant subpoena power to Bar Counsel prior to the scheduling of an Inquiry Panel. *See* Rule 16–706(d)(3)(c). Section (c) was added to BV4 at the request of Bar Counsel primarily to enable his staff to obtain financial and bank records in a more expedient manner. *See* Md. Court of Appeals, Standing Comm. on Rules of Practice and Procedure, Minutes of May 17–18, 1991, p.16., Reporters Note. The existing rule permitted an Inquiry Panel to cause the issuance of a subpoena for an Inquiry Panel proceeding; the proposed change permitted earlier responses from uncooperative attorneys who refused to produce their records. *See id.* In as much as Bar Counsel's investigation takes place before the Inquiry Panel is assembled and scheduled, Bar Counsel would resort to an "awkward procedure ... by convening a panel, establishing a 'dummy' date for final hearing to issue a subpoena for bank records or other records and awaiting the

receipt of those records and examination before convening the panel for a hearing." *Id.* (quoting Letter from William W. Beckett, Esq., Chairman of Attorney Grievance Commission, to Chief Judge Murphy (March 27, 1991)). The grant of this subpoena power was never intended to affect Rule 8.1 or Bar Counsel's ability to request information under that rule.

## C. Exceptions

■ Respondent has filed two exceptions. Respondent excepts to Judge Tisdale's findings of fact and conclusions of law regarding Rule 8.1. Aside from his subpoena argument, which we have rejected, Respondent contends that the letters that he received from Bar Counsel did not contain the word "demand," nor did the correspondence inform Respondent that failure to respond within any time period could be considered an ethical violation. With respect to the Szarvas matter, Respondent argues that Judge Tisdale never made a finding that any lawful demand for information was made of him. He further asserts that Judge Tisdale ignored evidence that he placed a call to Bar Counsel after receiving the investigator's business card in his mailbox and that this evidence demonstrates cooperation with Bar Counsel. Finally, Respondent takes issue with the charges in the Statement of Costs that Bar Counsel has recommended that this Court order Respondent to pay.

Respondent's argument that the letters of Bar Counsel were merely requests to respond, as opposed to demands, is plainly frivolous. We summarily rejected this argument in *Attorney Grievance v. Alison,* 349 Md. at 641, 709 A.2d at 1221. Alison claimed that the hearing judge had ignored the plain language of a letter from Bar Counsel, which, according to Alison, "merely invited a response" and Alison "chose not to accept the invitation." *Id.* at 641, 709 A.2d at 1221. We said: "We find no merit to this claim. It is clear that Respondent knowingly failed to respond to a lawful demand for information from a disciplinary authority." *Id.*

Respondent was put on notice that Bar Counsel considered these letters to be lawful demands and that a refusal to

respond to them would result in a violation of Rule 8.1, as Bar Counsel cited Rule 8.1 in three of the five letters that Respondent received. Judge Tisdale's conclusion of law that Bar Counsel's letters to Respondent qualified as lawful demands pursuant to Maryland Rule 8.1 was not clearly erroneous.

Because we conclude that letters from Bar Counsel qualify as lawful demands, Judge Tisdale made all of the necessary findings to support a violation of Rule 8.1. Judge Tisdale concluded that Bar Counsel established by clear and convincing evidence that Respondent received letters on five separate occasions involving two different complaints and that Respondent did not respond as requested.

■■■■■■ Factual findings of the hearing judge are prima facie correct and will not be disturbed on review unless clearly erroneous. *See Attorney Grievance v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999). Factual findings will not be disturbed if they are based on clear and convincing evidence. *See id.* The hearing judge may "pick and choose which evidence to rely upon." *Id.* (citing *Attorney Griev. Comm'n v. Kemp*, 303 Md. 664, 674, 496 A.2d 672, 677 (1985)). Thus, the fact that Respondent may have initiated the phone call that led to a ten-to-fifteen minute discussion of the case does not undermine the finding that Respondent violated Rule 8.1. Even viewing the phone call in the light most favorable to Respondent, his belated cooperation with Bar Counsel does not excuse Respondent's failure to respond to the previous five letters sent by Bar Counsel.

Respondent disputes the reasonableness of Bar Counsel's Statement of Costs, which Bar Counsel has requested that this Court order Respondent to pay. Respondent argues that various charges in the Statement of Costs are either excessive or unnecessary, contending that he should not be required to pay in excess of $.15 for photocopies or in excess of $3.00 per page for transcription, inasmuch as the transcripts were not prepared on a rush basis. Respondent also objects to the assessment for time, travel, and overtime of a stenographer brought in from Anne Arundel County when the same service

could have been obtained locally, presumably for less expense, in Frederick County.

The record before us, however, is devoid of any evidence regarding these charges. As such, Respondent has failed to carry his burden of proving his exception by a preponderance of the evidence. *See Sheridan,* 357 Md. at 17, 741 A.2d at 1152 (stating that attorney in a disciplinary hearing must establish factual matters in defense of attorney's position by preponderance of the evidence). Without evidence of the particular costs charged to Respondent and some evidence as to the reasonable charge for the same service, Respondent's exception must be denied.

## III.

We turn now to the question of the appropriate sanction. We are mindful that the purpose of disciplinary proceedings is to protect the public rather than to punish the errant attorney. *See Attorney Grievance v. Dechowitz,* 358 Md. 184, 192, 747 A.2d 657, 661 (2000). The public interest is served when this Court imposes a sanction that demonstrates to members of the legal profession the type of conduct that will not be tolerated. *See Attorney Grievance v. Bridges,* 360 Md. 489, 516, 759 A.2d 233, 247 (2000) (quoting *Brown,* 353 Md. at 295, 725 A.2d at 1080). The severity of the sanction imposed depends upon the facts and circumstances of each case. *See Dechowitz,* 358 Md. at 192, 747 A.2d at 661.

Respondent has violated Rules 1.3, 1.4, 3.2, and 8.1(b). Bar Counsel recommends that this Court impose a suspension of not less than sixty days and order Respondent to pay the Attorney Grievance Commission's costs in this matter. Respondent recommends that, if this Court imposes any sanction, it should be a public reprimand. As support for this recommendation, Respondent notes that he has been a member of the Bar of the State of Maryland since 1978 and has not previously been the subject of public discipline.

Judge Tisdale noted that Respondent's repeated refusal to comply with the requests of Bar Counsel demonstrated a

complete "disregard of the spirit and intent of the Rules of Professional Conduct." He concluded that, "Respondent resisted the efforts of the Commission to investigate the complaints and then attempted to justify his recalcitrance by a formalistic interpretation of procedural rules." We agree.

■ The practice of law carries with it special responsibilities of self-regulation, and attorney cooperation with disciplinary authorities is of the utmost importance to the success of the process and the integrity of the profession. *See In re Norlin*, 104 Wis.2d 117, 310 N.W.2d 789, 795 (1981). As the Supreme Court of Washington stated:

> The practice of law has been a profession of the highest order since its inception and it must continue to be so. Internal investigation of a complaint is an integral part of the machinery for handling charges regarding the ethics and conduct of the attorneys admitted to practice before this court. Public confidence in the legal profession, and the deterrence of misconduct, require prompt, complete investigations. The process of investigating complaints depends to a great extent upon an individual attorney's cooperation. Without that cooperation, the [disciplinary authority] is deprived of information necessary to determine whether the lawyer should continue to be certified to the public as fit. Obviously, unless attorneys cooperate in the process, the system fails and public confidence in the legal profession is undermined. If the members of our profession do not take the process of internal discipline seriously, we cannot expect the public to do so and the very basis of our professionalism erodes. Accordingly, an attorney who disregards his [or her] professional duty to cooperate with the [disciplinary authority] must be subject to severe sanctions.

*In re Clark*, 99 Wash.2d 702, 663 P.2d 1339, 1341–42 (1983).

Washington is not alone in recognizing the importance of attorney cooperation in disciplinary matters. *See, e.g., Committee on Prof'l Ethics and Conduct of the Iowa State Bar Ass'n. v. Horn*, 379 N.W.2d 6, 8 (Iowa 1985) ("It is vital to the

accused lawyer, the members of the bar, and the general public that a complaint against a lawyer be promptly investigated and evaluated."); *In re Staab,* 719 S.W.2d 780, 783 (Mo.1986) (stating that the disciplinary authorities give time and service to maintain high standard in the legal profession and are entitled at a minimum to courteous response and prompt cooperation); *In re Rogovoy,* 100 N.J. 556, 498 A.2d 769, 772 (1985) (stating that, when a lawyer shows disrespect to an Ethics Committee, the lawyer shows disrespect to state Supreme Court because Ethics Committee is an arm of the court); *In re Lince,* 200 N.W.2d 56, 59 (N.D.1972) (noting that attorney's failure to cooperate with the disciplinary authorities is inexcusable and merits the condemnation of the court).

Respondent's violations of the Rules of Professional Conduct regarding diligence, communication, expediting litigation, and responding to lawful demands of Bar Counsel are serious. We agree with Bar Counsel and find that a suspension for sixty days is the appropriate sanction. The suspension is to be effective thirty days from the date of the filing of this opinion.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST HOWARD J. FEZELL.*