628 A.2d 178

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**George F. DAVID, IV.**

**Misc. Docket (Subtitle BV) No. 36, Sept. Term, 1992.**

Court of Appeals of Maryland.

July 27, 1993.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Assistant Bar Counsel for the Attorney Grievance Commission of Maryland, argued for petitioner.

Herschel Milliken, Baltimore, argued for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

McAULIFFE, Judge.

Respondent George Franklin David IV was admitted to the Bar of the State of Maryland on 9 December 1982. He maintains a solo, general practice in Baltimore. The events leading up to the present disciplinary action occurred between 1990 and 1992 and involve respondent's handling of the cases of four former clients.

Petitioner Attorney Grievance Commission (AGC) commenced the present disciplinary action after receiving several complaints from former clients of respondent. The AGC filed a Petition for Disciplinary Action against him in this Court on 19 October 1992. We entered an order transmitting the charges to the Circuit Court for Baltimore City for hearing by Judge David Ross, and we directed that respondent file an answer within 15 days of service of the charges upon him. Respondent did not file a timely answer to the petition, and Judge Ross entered an order of default.

A hearing was held before Judge Ross on 25 January 1993. Respondent's counsel attended the hearing, but respondent did not. Respondent moved to vacate the default order, but Judge Ross denied the motion as untimely. Respondent's counsel requested a continuance to allow the respondent to be present, on the grounds that he "was unable to be here today." Judge Ross also denied respondent's motion for a continuance. Judge Ross accepted all of petitioner's requests for admissions of fact and genuineness of documents, with the express consent of counsel for the respondent.

In a memorandum opinion dated 26 January 1993, Judge Ross addressed separately respondent's actions as to each of the four complainants. Judge Ross made the following conclusions of law:

1) With respect to the complaint of Michelle Perdue, respondent violated Rules of Professional Conduct 1.3, 1.4(a),

1.5(a)(1) through (8), 1.16(d), 8.1(a) and (b), 8.4(a), (c) and (d).

2) With respect to the complaint of Gail Moses–Kareri, respondent violated Rules 1.1, 1.3, 1.4(a), 1.15(b), 5.3(b) and (c)(1) and (2), 8.1(b), 8.4(a) and (d).

3) With respect to the complaint of Pamela Barnes, respondent violated Rules 1.3, 1.4(a), 8.1(b), 8.4(a) and (d).

4) With respect to the complaint of Theresa Telp, respondent violated Rules 1.3, 1.4(a), 5.3(b), 8.4(a) and (d).

Neither party filed exceptions to Judge Ross' findings of fact and conclusions of law. Respondent appeared by counsel in this Court to request that the sanction be limited to a reprimand, or in the event of a suspension, that payment of costs be waived. We briefly review the facts of the four cases which resulted in this disciplinary action.

## COMPLAINT OF MICHELLE PERDUE

Ms. Michelle Perdue retained the respondent in June of 1991 to represent her in a domestic relations case. She paid the respondent $750 as a retainer on 14 June 1991. Respondent promised Ms. Perdue that he would prepare some papers for her signature by 18 June. Ms. Perdue called the respondent's office every day for a two week period beginning on 18 June, and was repeatedly told that respondent was not available and that the papers were not completed.

Respondent was notified that a hearing on Ms. Perdue's domestic relations case was scheduled for August of 1991. He did not inform Ms. Perdue of the court date, nor did he file his appearance with the court. When Ms. Perdue's case was postponed, she discharged respondent and retained new counsel. Ms. Perdue requested the return of her $750 fee on that date, but respondent did not refund this sum until his Inquiry Panel Hearing on 13 March 1992.

After respondent was discharged, Ms. Perdue and her new attorney attempted to contact him about her case. Respondent did not answer their letters nor return their telephone calls. He also did not respond in a timely fashion to three

letters from the AGC concerning Ms. Perdue's complaint. When respondent did contact the AGC by letter dated 3 September 1991, he alleged that Ms. Perdue was already represented by another attorney when she approached him about representing her in her domestic relations case. In fact, the record reflects that Ms. Perdue had discharged her previous attorney before contacting respondent.

## COMPLAINT OF GAIL MOSES–KARERI

Ms. Gail Moses–Kareri was injured in an automobile accident in April 1990. She contacted respondent about representing her in connection with claims arising out of this accident. On 5 June 1990, she met with respondent's paralegal, Ted Brown, and signed a retainer agreement engaging respondent as her counsel. Ms. Moses–Kareri also signed medical and lost wage authorizations at that time, and provided Mr. Brown with all relevant information about the accident, including the other vehicles involved and her own insurance data. Ms. Moses–Kareri gave Mr. Brown a copy of the personal injury protection (PIP) form she had already submitted to her insurance carrier, Allstate Insurance Company (Allstate).

Respondent wrote letters to Allstate and the United States Postal Service, Ms. Moses–Kareri's employer, informing them that he would be representing her in claims arising out of the accident. Respondent also requested a police report of the accident. He did not contact the insurance carrier of the party responsible for the accident, nor did he take any other substantive action on the case. Respondent did not pursue any party responsible for his client's injuries or property damage. Respondent received a check from Allstate in the amount of $2,480.04, representing the partial settlement of Ms. Moses–Kareri's claim for personal injury protection benefits arising out of her accident. Respondent endorsed the check in the name of Ms. Moses–Kareri and deposited it in his escrow account in October of 1990. Respondent never informed Ms. Moses–Kareri of the receipt of this check and did not pay her

medical bills nor reimburse her for lost wages.[1]  Respondent also did not contact her regarding the status of her claim.

When Ms. Kareri discovered through her own investigations that Allstate had sent respondent a check, she attempted to contact him numerous times by mail and telephone, and visited his office to speak with him.  Respondent admitted in his testimony before the Inquiry Panel that he never returned any of Ms. Moses–Kareri's calls before 1991.  Respondent eventually remitted a check in the amount of $2,480.04 to Ms. Moses–Kareri on 8 July 1991, almost nine months after he received that amount from her insurance carrier.

The AGC docketed a complaint against respondent as a result of two letters written by Ms. Moses–Kareri.  In a letter dated 7 August 1991, the AGC ordered respondent to address in writing the charges against him within fifteen days.  Specifically, petitioner requested documentation that the check received on behalf of Ms. Moses–Kareri from her insurance company was retained in escrow from the date of deposit until the time he turned that amount over to her, and a detailed accounting of the services performed on her behalf.

Respondent ignored this letter, and another was sent on 29 August 1991, demanding a reply within ten days.  When respondent did contact the AGC by letter dated 3 September 1991, he failed to produce the requested documentation regarding his escrow account and did not provide a detailed account of the work done in pursuit of Ms. Moses–Kareri's claim.  Respondent similarly ignored three subsequent inquiries by the AGC requesting verification of the date on which he had asked Ms. Moses–Kareri to pick up her PIP benefits, and demanding that respondent forward the bank records for his escrow account.  At his hearing before the Inquiry Panel

---

1.  A paralegal employed by respondent sent Ms. Moses–Kareri a letter dated 19 August 1990 alleging that respondent had learned that she had settled her case without notifying his office, and that she should check with him to collect any money received on her behalf from the insurer. Respondent never affirmatively notified Ms. Moses–Kareri on his own initiative that he had received monies on her behalf.

on 13 March 1992, respondent testified that he had no explanation for his failure to provide his bank records to the AGC:

BAR COUNSEL: What is your explanation for not responding to at least Bar Counsel # 7, the October 9 letter?

RESPONDENT: I have no explanation for that. By the October 9 letter, I had already sent the bank records. My assumption was they had been received.

BAR COUNSEL: Wouldn't your assumption be rebutted by a letter like that?

RESPONDENT: It should be.

### COMPLAINT OF PAMELA BARNES

Ms. Pamela Barnes approached respondent about representing her in claims arising out of an automobile accident in January 1990 in which she sustained injuries. Ms. Barnes retained respondent when her original attorney, Mr. Wendall Grier, was suspended from the practice of law in Maryland during the course of his pursuit of her claims.

In December 1990, Ms. Barnes executed a release authorizing respondent to obtain her case file from Mr. Grier. At that time, she also gave respondent all pertinent insurance information. Respondent never attempted to obtain Ms. Barnes' file from her previous attorney, nor did he take any substantive action in pursuit of her claims. Respondent failed to return Ms. Barnes' phone calls and her written correspondence, and did not keep her apprised of the status of her case.

Because of respondent's failure to communicate with her, Ms. Barnes engaged the services of another attorney, Mr. Stanley H. Miller. By letter dated 19 September 1991, Mr. Miller noted his and Ms. Barnes' previous oral and written inquiries concerning Ms. Barnes' file, and again requested that respondent contact Mr. Miller regarding her claim. Respondent admitted in his testimony before the Inquiry Panel that he never responded to Mr. Miller's letter. Respondent also failed to respond to two written inquiries by the AGC regarding Ms. Barnes' complaint.

## COMPLAINT OF THERESA TELP

On 29 October 1991, Ms. Theresa Telp contacted respondent by telephone about representing her in an uncontested divorce. Ms. Telp arranged to meet with respondent that afternoon at his office. When she arrived there at the designated time, respondent called to inform her that he would not be able to meet with her that day, but instructed Ms. Telp to leave $470.00 with his secretary as his fee for representing her in the divorce proceedings.

Ms. Telp paid $300.00 that day and returned on 1 November with the balance of $170.00. On that date, she executed a complaint for divorce which respondent had prepared for her signature. A few weeks later, Ms. Telp called respondent's office to check on the status of her case and was told by respondent's secretary that her complaint had been filed. In fact, respondent did not file Ms. Telp's complaint for divorce until 11 December 1991, almost six weeks later.

Upon learning from her husband on 15 November that he had not yet been served with divorce papers, Ms. Telp attempted to contact respondent numerous times at his office. Respondent did not return Ms. Telp's calls, nor did he keep her informed about the status of her case by other means. Ms. Telp filed a complaint against respondent with the AGC on 10 December 1991 which resulted in the present disciplinary action. Counsel for respondent informed this Court at oral argument that respondent has refunded half of the $470.00 fee paid by Ms. Telp, by mutual agreement.

### SANCTION

■■ As Bar Counsel points out, respondent's representation of these four clients was marked by serious neglect and inattention. Respondent failed to return a fee which was unearned for a period of nine months; he failed to timely remit funds he received on behalf of a client; he failed to communicate with his clients; and in connection with the investigation of three of the complaints, respondent failed to answer Bar Counsel's requests for information. The sanction

we impose must provide adequate protection to the public and motivate respondent to adopt appropriate practices in the future. Accordingly, George F. David IV shall be indefinitely suspended from the practice of law, with the right to apply for reinstatement after the suspension has been in effect for six months. Respondent's reinstatement shall be conditioned upon his payment of all costs in this matter, and upon the monitoring of respondent's practice for a period of not less than two years by a monitor approved by Bar Counsel and by this Court. The suspension shall be effective 15 days from the filing of this opinion.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GEORGE F. DAVID IV.*