*Attorney Grievance Commission of Maryland v. Kevin Trent Olszewski*, Misc. Docket AG No. 48, September Term, 2013. Opinion by Greene, J.


ATTORNEY DISCIPLINE – Under the circumstances, an attorney's failure to act with competence and diligence in his representation of clients, failure to remedy a conflict of interest causing prejudice to his clients, and mishandling of client funds warrant the sanction of indefinite suspension with the right to reapply after six months.

Circuit Court for Baltimore County
Case No. 03-C-13-012844
Argued: December 10, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 48

September Term, 2013

————————————————————————

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

KEVIN TRENT OLSZEWSKI

————————————————————————

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

————————————————————————

Opinion by Greene, J.

————————————————————————

Filed: January 27, 2015

On September 27, 2013, the Attorney Grievance Commission of Maryland ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16-751(a), filed a "Petition For Disciplinary Or Remedial Action" against Kevin Trent Olszewski ("Respondent" or "Olszewski") arising out of two separate client complaints. Petitioner charged Respondent with violating various Maryland Lawyers' Rules of Professional Conduct ("MLRPC" or "Rule"), specifically Rule 1.1 (Competence),[1] Rule 1.3 (Diligence),[2] Rule 1.4 (Communication),[3] Rule 1.5 (Fees),[4] Rule 1.7 (Conflict of Interest),[5] Rule 1.15

---

[1] MLRPC 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[2] MLRPC 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[3] MLRPC 1.4 provides in pertinent part:
(a) A lawyer shall:
> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these rules;
> (2) keep the client reasonably informed about the status of the matter;
> (3) promptly comply with reasonable requests for information; and
> (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the [MLRPC] or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[4] MLRPC 1.5 provides in pertinent part:
(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. . . .
(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly

(continued...)

(Safekeeping Property),[6] 1.16 (Declining or Terminating Representation),[7] Rule 8.1 (Bar

---

[4](...continued)
represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

[5] MLRPC 1.7 provides:
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a conflict of interest under paragraph (a), a lawyer may represent a client if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

[6] MLRPC 1.15 provides in pertinent part that:
(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.
(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

Admission and Disciplinary Matters),[8] and Rule 8.4(a) and (d) (Misconduct).[9]

This Court referred the matter to the Honorable Robert Edward Cahill, Jr. of the Circuit Court for Baltimore County for a hearing and to render findings of fact and conclusions of law pursuant to Maryland Rule 16-757. Judge Cahill conducted an evidentiary hearing on February 20, 2014, at which the parties submitted an agreed stipulation of facts and exhibits. Judge Cahill heard testimony from Respondent and three other witnesses: Shaneise T. Ware, Lizabel Acosta-DeJesus, and Margaret Hoffman. Thereafter, Judge Cahill issued Findings of Fact and Conclusions of Law, in which he found, by clear and convincing evidence, that Respondent violated MLRPC 1.1, 1.3, 1.4, 1.5, 1.7, 1.15, 1.16, 8.1, 8.4(a) and (d).

### Findings of Fact and Conclusions of Law

Respondent was admitted to the practice of law on December 10, 1982, and maintains

---

[7] MLRPC 1.16 provides in pertinent part that "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the [MLRPC] or other law. . . ."

[8] MLRPC 8.1 provides in pertinent part that "a lawyer . . . in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact; or (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

[9] MLRPC 8.4 provides in pertinent part that "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the [MLRPC], knowingly assist or induce another to do so, or do so through the acts of another; . . . [or] (d) engage in conduct that is prejudicial to the administration of justice. . . ."

a solo practice in Bel Air, Maryland, focusing on collections, construction law, general civil litigation, and wills and estate matters. The instant proceedings arose out of two separate client complaints: one filed by Mr. and Mrs. Ware, the other by the office of Ramon A. DeJesus, M.D., LLC.

## Ware Complaint

Mrs. Ware retained Respondent to represent her and her husband, Mr. Ware, on September 24, 2009, following a single vehicle accident in which both Mr. and Mrs. Ware sustained injuries. The accident occurred on September 21, 2009, at which time Mrs. Ware was driving and Mr. Ware was a front seat passenger. Due to the severity of his injuries, Mr. Ware was taken to the University of Maryland's Shock Trauma Unit for treatment. He remained in the hospital at the time that Mrs. Ware retained Respondent to represent them, but Mr. Ware signed a separate retainer agreement with Respondent on November 10, 2009.

On behalf of Mr. and Mrs. Ware, Respondent secured the payment of PIP benefits from Mrs. Ware's insurer, the Maryland Automobile Insurance Fund. In completing further investigation of the Wares' potential claims, Respondent discovered that the vehicle involved in the accident, a 2000 Buick LeSabre, was a rebuilt salvage vehicle. That fact had not been disclosed to the Wares when they purchased the vehicle in July 2009 from BH Motors in Joppa, Maryland. Respondent also learned that Mrs. Ware's insurance policy provided the minimum statutory liability limits, which Mr. Ware's medical bills far exceeded.

On June 29, 2012, Mr. and Mrs. Ware filed a complaint with Petitioner, alleging that

4

Respondent would not return their telephone calls or advise them about "the status of our case." Petitioner sent letters to Respondent, dated July 13, 2012, August 8, 2012, and October 12, 2012, requesting a response to the Wares' allegations. Despite receipt of the letters, Respondent failed to respond.

On September 21, 2012, Respondent filed in the Circuit Court for Harford County a civil action against Mrs. Ware on behalf of Mr. Ware. Then, on September 24, 2012, Respondent filed a separate action in the Circuit Court for Harford County on behalf of both Mr. and Mrs. Ware against BH Motors. On February 23, 2013, the Circuit Court consolidated the two civil cases pursuant to a joint motion filed by the respective defendants. Ultimately, both cases were dismissed.

Respondent admitted that his representation of Mr. Ware against Mrs. Ware created a conflict of interest. Although Respondent maintained that he discussed the conflict of interest with the Wares, the hearing judge found otherwise based on the credible testimony of Mrs. Ware, who testified that Respondent never discussed the question of a conflict with her. Respondent acknowledged that he should have instructed Mr. Ware to retain a different attorney, or referred the case to another attorney, in the lawsuit against Mrs. Ware. In any event, the hearing judge found that Respondent "plainly knew, or should have known of this obvious conflict and ignored it."

In addition, the hearing judge found that, though Respondent adequately communicated with Mrs. Ware in the early stages of his representation, Respondent failed

5

to respond to her telephone calls during the months leading up to the Wares' filing of the attorney grievance complaint. Therefore, the hearing judge found that Respondent "failed to adequately or effectively communicate with Mrs. Ware about the status of her claims, or about the propriety of representing Mr. Ware in his case against her."

With regard to the Ware complaint, Judge Cahill reached the following conclusions of law:

1. The Petition for Disciplinary of Remedial Action alleges that, with respect to Mr. and Mrs. Ware, [Respondent] violated Rules 1.1 (Competence), 1.3 (Diligence), 1.4(a) (Communication), 1.7 (Conflict of Interest), 1.16(a) (Declining/Terminating Representation), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a) and (d) (Misconduct) of the [MLRPC].

2. Petitioner has proved that [Respondent] violated Rule 1.1 by clear and convincing evidence. While [Respondent] secured PIP benefits for both Mr. and Mrs. Ware from [the Maryland Automobile Insurance Fund], and while he initiated a proper investigation into claims arising from the purchase of the 2000 Buick LeSabre and the accident, a minimal threshold of competent representation was breached when he agreed to represent one client against another and continued with that representation to the point of filing an action against Mrs. Ware on behalf of Mr. Ware.

3. Petitioner also proved by clear and convincing evidence that [Respondent] violated Rule 1.3 by failing to act with reasonable diligence and promptness in the representation of the Wares. He waited until the end of the limitations period to file the actions in court, and appears to have done so at least partially due to the filing of the Attorney Grievance Commission complaints. In Mr. Ware's case against his wife, while the progress of discovery was complicated by the fact that Mr. Ware was incarcerated for important periods of time, and the fact that the Wares, at some point, obtained protective orders against one another, [Respondent] clearly violated the diligence standard in failing to timely furnish discovery, resulting in the need for [the trial court] to actively intervene in the matters.

4. Petitioner has proved a violation of Rule 1.4. [Respondent] failed to keep

6

Mrs. Ware reasonably informed about the status of her matter and did not comply promptly with her reasonable requests for information when she repeatedly attempted to contact him by phone during the months prior to filing a grievance. Such failure to communicate violated subsections (a)(2) and (a)(3) of Rule 1.4. When he initially undertook the joint representation of the Wares, [Respondent] did not inform Mrs. Ware of a decision or circumstance with respect to which her informed consent, as defined in Rule 1.0(f), was required. He therefore violated Rule 1.4(a)(1). By virtue of his failure to provide Mrs. Ware with any information regarding the filing of a lawsuit against her and his failure to explain to Mrs. Ware that a motion to dismiss had been filed and granted in the case in which she was a plaintiff, [Respondent] violated Rule 1.4(b).

5. Petitioner has established a violation of Rule 1.7. [Respondent]'s joint representation of Mr. and Mrs. Ware, even if it did not immediately present a conflict of interest in his mind, certainly became a conflict of interest for him when he filed suit on behalf of Mr. Ware against Mrs. Ware. As counsel for [BH Motors] noted in response to the motion for reconsideration filed by [Respondent] after the Wares' joint action was dismissed with prejudice due to discovery failures, [Respondent] "represented Shaneise T. Ware in one case as Plaintiff, and sued her in another case as Defendant, which would appear to be the very definition of a conflict." [Respondent]'s conflict involved the type of directly adverse representation to which a client cannot consent, inasmuch as it involved "the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." Rule 1.7(b)(3). Even if the conflict could have been waived, [Respondent] never sought to obtain Mrs. Ware's informed consent, in writing or otherwise, at any time before filing suit against her on behalf of Mr. Ware. By engaging in an obvious conflict of interest, [Respondent] violated Rule 1.7.

6. Petitioner has proved a violation of Rule 1.16 by clear and convincing evidence. By failing to withdraw from the representation of both Mr. and Mrs. Ware once it was apparent that [Respondent]'s continued representation presented an obvious conflict, [Respondent] violated Rule 1.16(a)(1), which requires withdrawal when "the representation will result in a violation of the [MLRPC] or other law."

7. [Respondent] knowingly failed to respond to three separate letters sent by [Petitioner] for the purpose of obtaining his written response to the Wares' complaint. Such failure to respond violated Rule 8.1(b). *Attorney Grievance*

*Commission v. Fezell*, 361 Md. 234, 249, 760 A.2d 1108, 1116 (2000) ("An attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information."). He subsequently did cooperate with [Petitioner]'s investigator, fully and completely.

8. By violating the [MLRPC] as discussed herein, [Respondent] engaged in professional misconduct in violation of Rule 8.4(a). [Respondent] also engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d).

### DeJesus Complaint

Lizabel Acosta-DeJesus, the office manager for Roman A. DeJesus, M.D., LLC, signed a written Representation and Fee Agreement on December 2, 2008, engaging Respondent for the purpose of collection of delinquent accounts owed to Dr. DeJesus's medical practice. The Representation and Fee Agreement specified that Respondent would represent Dr. DeJesus's medical practice on a contingent fee basis, at a rate of 33.3% of the amount collected. By letter dated November 19, 2008, attached to the Representation and Fee Agreement, Respondent stated that he would only accept claims greater than $3,000.00, because, in his experience, it would be cost prohibitive to take collection actions for accounts valued below $3,000.00, unless the client has a high volume of collection cases.

Since 2008, Dr. DeJesus's office referred only two collection cases to Respondent. Respondent resolved the first collection matter against a DeJesus patient, Brian Bragg, and forwarded the monthly payments he received from the patient to Dr. DeJesus's office. On September 21, 2011, Dr. DeJesus's office referred the account of Cherie L. Chase to Respondent for collection. At that time, the account had a delinquent balance of $9,075.00.

8

Prior to referring Ms. Chase's account to Respondent, Dr. DeJesus's office had made attempts to obtain payment from Ms. Chase's insurer. The insurer declined payment, however, because it required additional information from Ms. Chase, which she failed to provide. Dr. DeJesus's office informed Ms. Chase that the insurer would not provide payments unless it received the information from her, and that, alternatively, she could file an appeal with the insurer, prompting them to make payments to Dr. DeJesus. Respondent was unaware of the communications with the insurance company, and had been advised by Dr. DeJesus's office that the insurer's time frame for claim submission had already passed. Accordingly, Respondent was unaware that Ms. Chase's account balance was subject to change by means of an insurance adjustment.

Respondent sent correspondence to Ms. Chase, and on December 21, 2011, filed a collection action against her in the District Court of Maryland, sitting in Harford County. After being served, Ms. Chase informed Respondent that she would contact the insurer. Shortly before the scheduled trial date, Dr. DeJesus's office received notice that Ms. Chase had submitted the necessary information to allow the insurer to process her claim. Ms. Chase's insurer paid Dr. DeJesus's office $1,745.61, but adjusted the balance and did not cover the amount of $6,873.31. Dr. DeJesus's office wrote off the adjusted amount as uncollectible. As a result, the remaining principal balance on the Chase account was $456.08. On the trial date, March 30, 2012, with the approval of Dr. DeJesus's office, Respondent and Ms. Chase reached a settlement agreement for substantially more than

9

$456.08. At that time, the settlement agreement was placed on the record, but was not reduced to a consent judgment.

Thereafter, on April 5, 2012, Respondent sent a "remittance report" to Dr. DeJesus's office. This report itemized the insurance payments and adjustments to the Chase account and stated that Respondent's contingency fee for this matter was one-third of the insurance payment of $1,745.61. Respondent also charged a 15% fee on the adjusted amount for an additional fee of $1,031.00. Dr. DeJesus's office disputed the $1,031.00 fee, because the $6,873.31 adjustment amount was not actually collected on the account. To cover the claimed 15% fee, despite knowledge that Dr. DeJesus's office disputed the fee, Respondent withheld funds owed to Dr. DeJesus from the monthly payments he was receiving on the Bragg account. Respondent did not explain to Dr. DeJesus's office that funds collected on one account could be applied to pay Respondent's fee related to a separate account. The amount Respondent withheld from the Bragg account, over a period of several months, totaled $1,279.69. On April 30, 2012, Respondent received a $500.00 payment from Ms. Chase. From that payment, he deducted his fee of $166.70 (33% of $500.00). He also retained the remaining 67% of the payment ($333.30) that was payable to Dr. DeJesus. Thus, between the amounts withheld from the Bragg payments and the amount withheld from the Chase payment, Respondent retained for himself a total fee of $1,612.99 claimed on the Chase account.

At the disciplinary hearing on February 20, 2014, Respondent testified that he

10

recognized his error in taking a contingency fee on an amount not actually recovered for Dr.

DeJesus and he expressed genuine remorse for withholding funds from the collections on the

Bragg account.  As of the hearing date, however, Respondent had not issued a refund to Dr.

DeJesus, but indicated that he was pursuing collection of the remaining balance on the

account from Ms. Chase and would forward the first $1,031.00 received to Dr. DeJesus.  The

record indicates that Respondent did remit a payment of $1,031.00 to Dr. DeJesus's office

by check dated April 10, 2014.

With regard to the DeJesus complaint, Judge Cahill concluded that Respondent

violated MLRPC 1.5(a) and (b), 1.15(d) and (e), 8.1(b), and 8.4(a) and (d), as follows:

1.  The Petition for Disciplinary or Remedial Action alleges that, with respect
to Dr. DeJesus, [Respondent] violated [MLRPC 1.5(a) and (b), 1.15(d) and (e),
8.1(b), and 8.4(a) and (d)].

2.   Petitioner has established by clear and convincing evidence that
[Respondent] violated Rule 1.5(a) and (b). [Respondent] and Dr. DeJesus's
office entered into a written Representation and Fee Agreement under which
Dr. DeJesus's office retained [Respondent] to represent Dr. DeJesus's practice
on a contingent fee basis pursuant to Rule 1.5.  Pursuant to the agreement,
[Respondent]'s fees were to be payable at a contingency rate of 33.3% of the
amount collected.  In seeking to recover a fee, albeit a fee reduced to 15%, it
was a fee imposed on underlined uncollected funds, and as such, it was unreasonable.

While [Respondent] did perform significant work on the Chase
collection matter, including contacting the defendant before filing the action,
drafting and filing a Complaint, propounding discovery, filing a motion for
sanctions based on the defendant's failure to respond to discovery, appearing
in [c]ourt on the day of the trial, and negotiating a settlement between the
defendant and Dr. DeJesus's office, he was not entitled to unilaterally decide
to collect the additional 15% fee based on the changed circumstance of an
unanticipated insurance payment. The 15% fee charged was not unreasonable
in relation to the effort put forth by [Respondent], but the imposition of that

11

fee unilaterally, without the agreement of Dr. DeJesus's office constitutes a violation of Rule 1.5.

3. Rule 1.15(d) requires a lawyer to "deliver promptly to the client . . . any funds that the client . . . is entitled to receive." [Respondent] violated the Rule by diverting funds belonging to Dr. DeJesus from payments on the Bragg account to satisfy the claim which he asserted against Dr. DeJesus for his work on the Chase collection matter. By failing to separate and hold in trust the $1,031.00, which he knew was disputed by Dr. DeJesus's office, [Respondent] violated Rule 1.15(e).

4. Generally, the [c]ourt does not find that [Respondent] failed to respond to Bar Counsel's inquiries with respect to the DeJesus Complaint. He promptly responded to Bar Counsel's letters of May 30 and June 12, 2012 and cooperated with Bar Counsel's investigator by submitting to a full interview on December 13, 2012. He did fail to respond to a letter of September 28, 2012, a technical violation of Rule 8.1(b).

5. By violating the [MLRPC] as discussed above, [Respondent] violated Rule 8.4(a). He also engaged in conduct prejudicial to the administration of justice by collecting [an] unreasonable fee and diverting the funds rightfully due Dr. DeJesus from the Brian Bragg case.

### Mitigation/Aggravation

In addition, the hearing judge made the following findings with regard to mitigation and aggravation:

During a five-month period in 2012, four bar complaints were filed against [Respondent] with the Attorney Grievance Commission. In March 2012, he timely responded to Bar Counsel's request for information and the grievance was dismissed. In May 2012, [Respondent] timely responded to Bar Counsel's request for information in two separate matters, including the DeJesus matter. One of these grievances was dismissed and [Respondent] provided additional information with respect to the DeJesus matter upon Bar Counsel's request. In July 2012, [Respondent] received the Wares' grievance. When [Respondent] received the Wares' grievance, he testified credibly that he felt overwhelmed, dumbfounded, and "shell shocked." As a result of feeling overwhelmed, [Respondent] became depressed and admits that he "stuck his

head in the sand," with the hope that the grievance would go away. [Respondent] admits that he made a mistake by not responding to Bar Counsel's requests for information in the Ware matter and in not responding to the September 28, 2012 letter in the DeJesus matter. [Respondent] did, however, cooperate with Bar Counsel's investigator and [Respondent] was interviewed on December 13, 2012 regarding both the Ware and DeJesus matters.

As [Respondent] was receiving these bar complaints in 2012, he testified, again credibly, that he was also having family issues [involving his son's drug use and criminal possession charge]. . . . [Respondent]'s home was burglarized in the same time frame, and he sustained a loss of family heirlooms. [Respondent]'s testimony concerning the cumulative effect of these complaints and these personal/emotional problems was credible and appeared sincere.

As described above, during the course of [Respondent]'s representation of Mr. and Mrs. Ware, the Wares' domestic issues and Mr. Ware's incarceration posed some challenges to [Respondent]'s ability to communicate with Mr. and Mrs. Ware at the same time. Despite these communication challenges, [Respondent] met and conferred with Mr. and Mrs. Ware to a reasonable extent early in the representation. As that representation proceeded, however, his failure to return Mrs. Ware's phone calls became sufficiently problematic to cause her to file her complaint. The [c]ourt does conclude that [Respondent] has established an absence of dishonest or selfish motive with respect to the Ware complaint. His conduct appears to be a product of a sort of representational paralysis in the face of a difficult case rather than of dishonesty.

[Respondent] acknowledges that he should have instructed Mr. Ware to find another attorney to represent him in the lawsuit against Mrs. Ware or, alternatively, referred the case to another attorney. He made a credible commitment in the context of the judicial hearing that, in the future, in the event that he encounters a potential conflict of interest in his practice, he will discuss the conflict with the client and with another attorney and, as necessary, refer the case to an outside attorney. Therefore, he has established some element of remorse and interim rehabilitation by a preponderance of the evidence.

Finally, with respect to the DeJesus matter, [Respondent] admits that he erred by taking a 15% contingency fee on the amount of the uncollectible claim that

was ultimately written off by Dr. DeJesus's office and then collecting that fee from the Bragg payments, without seeking to first secure an agreement with respect to compensation for his work on the Chase collection case. His expression of remorse was genuine. While his commitment to repay Dr. DeJesus's office the $1,031.00 which he diverted from the Bragg collection payments seemed sincere, the fact that he had not made that payment or any part of that payment as of the date of the judicial hearing precludes a reasoned determination that this can be considered a matter of mitigation, and frankly, might be considered a minor aggravating factor under the circumstances, although he was not "indifferent" to the need to make restitution, the term used in Maryland's aggravation cases.

## DISCUSSION

In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance Comm'n v. Jarosinski*, 411 Md. 432, 448, 983 A.2d 477, 487 (2009). "The Court gives deference to the hearing judge's assessment of the credibility of the witnesses." *Attorney Grievance Comm'n v. Thomas*, 409 Md. 121, 147, 973 A.2d 185, 201 (2009) (citing *Attorney Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368, 952 A.2d 226, 236 (2008)). Where no exceptions are filed to the hearing judge's findings of fact, we "may treat the findings of fact as established for the purpose of determining appropriate sanctions[.]" Md. Rule 16-759(b)(2)(A); *see also Attorney Grievance Comm'n v. Bell*, 432 Md. 542, 558, 69 A.3d 1040, 1049 (2013) (quoting *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 334, 68 A.3d 862, 868 (2013)) ("[W]e deem the hearing judge's findings of fact 'correct if (1) they are not clearly erroneous, or (2), at the Court's option, if neither party filed exceptions to them.'"). We review the hearing judge's conclusions of law *de novo*. Md. Rule 16-759(b)(1). Based on our review of the

14

record, and because neither Respondent nor Petitioner filed exceptions, we conclude that Judge Cahill's findings and conclusions are supported by clear and convincing evidence.

**Ware Complaint**

MLRPC 1.1 requires a lawyer to provide competent representation to his or her clients. As defined in the Rule, "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1. We agree with the hearing judge that, on the facts of this case, "a minimal threshold of competent representation was breached when [Respondent] agreed to represent one client against another and continued with that representation to the point of filing an action against Mrs. Ware on behalf of Mr. Ware."

MLRPC 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client." We agree with the hearing judge that Respondent violated Rule 1.3 by waiting until the end of the limitations period, almost three years after the injury, to file a lawsuit. *See Attorney Grievance Comm'n v. Davis*, 375 Md. 131, 162, 825 A.2d 430, 448 (2003) (concluding that the attorney did not act with reasonable diligence when she waited to file suit until the day before the limitations period expired). We further agree that Respondent violated Rule 1.3 by failing to timely furnish responses to discovery requests, requiring the intervention of the Administrative Judge and ultimately leading to the dismissal of one of the cases. *See Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 320, 44 A.3d 344, 358 (2012) (concluding that the attorney's "lack of diligence and promptness in

15

answering the opposing parties' discovery requests caus[ing] the judge in each case to issue sanctions" constituted a violation of Rule 1.3).

MLRPC 1.4(a) requires an attorney to "(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required . . . ; (2) keep the client reasonably informed about the status of the matter; [and] (3) promptly comply with reasonable requests for information[.]" We agree with the hearing judge that Respondent clearly violated Rule 1.4(a)(1) by failing to explain the potential conflict of interest when he undertook joint representation of Mr. and Mrs. Ware. In addition, we agree that Respondent clearly violated Rule 1.4(a)(2) and (3) when he failed to respond to phone calls from Mrs. Ware and failed to keep the Wares informed of the status of their matters, including the dismissal of the case in which Mrs. Ware was the plaintiff. *See Attorney Grievance Comm'n v. Heung Sik Park*, 427 Md. 180, 193, 46 A.3d 1153, 1160 (2012) (concluding that the attorney violated Rule 1.4 by failing to inform the client about requests for additional information and that the client's claim had been denied, and by failing to respond to repeated inquiries from the client).

MLRPC 1.7 provides that, generally, "a lawyer shall not represent a client if the representation involves a conflict of interest." We agree with the hearing judge that Respondent's joint representation of Mr. and Mrs. Ware became a conflict of interest, at the very latest, when Respondent filed suit on behalf of Mr. Ware against Mrs. Ware. Prior to that, moreover, Respondent should have been aware that there was a potential conflict of

16

interest at the outset of the representation, knowing that as a result of the automobile accident, Mr. and Mrs. Ware had adverse, competing interests. *See Attorney Grievance Comm'n v. Zhang*, 440 Md. 128, 162, 100 A.3d 1112, 1132 (2014) (concluding that the attorney had a conflict of interest in violation of Rule 1.7 when her representation of wife in annulment matter and her representation of husband in an immigration matter overlapped for at least one month). Moreover, Judge Cahill was correct that the conflict of interest here is unwaivable. *See* MLRPC 1.7(b)(3) (providing that a lawyer may not represent opposing clients, even if the clients provide informed consent, when the representation "involve[s] the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal").

MLRPC 1.16(a)(1) requires a lawyer to decline or terminate representation if "the representation will result in violation of the [MLRPC]." We agree with the hearing judge that Respondent violated Rule 1.16 when he failed to terminate his representation of the Wares when it should have become apparent that there existed a conflict of interest. *See Zhang*, 440 Md. at 163, 100 A.3d at 1132 (concluding that attorney violated Rule 1.16(a) where attorney "had a conflict of interest in representing both Husband and Wife at the same time" when the husband and wife had competing interests).

MLRPC 8.1 requires a lawyer to timely respond to lawful requests for information, including letters, from Bar Counsel. *See Attorney Grievance Comm'n v. Fezell*, 361 Md. 234, 249, 760 A.2d 1108, 1116 (2000), and cases cited therein. We agree with the hearing

17

judge that Respondent violated Rule 8.1 by knowingly failing to respond to three letters sent to him by Bar Counsel regarding the Ware complaint.

MLRPC 8.4(a) defines professional misconduct as "violat[ing] or attempting to violate the [MLRPC] . . . ." Accordingly, we agree with the hearing judge that by violating the MLRPC as described above, Respondent is in violation of Rule 8.4(a). MLRPC 8.4(d) further defines professional misconduct as "engag[ing in conduct that is prejudicial to the administration of justice." Although the hearing judge did not specify on which facts he based his conclusion that Respondent violated Rule 8.4(d), based on our independent review of the record, we agree that the hearing judge's conclusion was correct. Where Respondent failed to competently and diligently represent the Wares, ultimately resulting in the dismissal of their case(s), Respondent engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d). *See Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 556, 16 A.3d 181, 194 (2011) (concluding that the attorney violated Rule 8.4(d) when he failed to file a petition to open an estate, resulting in the dismissal of his client's complaint).

### DeJesus Complaint

MLRPC 1.5(a) authorizes a lawyer to charge a reasonable fee. Rule 1.5(b) further requires that "[a]ny changes in the basis or rate of the fee or expenses shall also be communicated to the client." Respondent's fee agreement with Dr. DeJesus's office specified that he would be entitled to 33.3% of the amount collected. We agree with the hearing judge that by charging a 15% fee on <u>uncollected</u> funds, Respondent did not charge

18

a reasonable fee, in violation of Rule 1.5(a), and, moreover, failed to communicate his unilateral modification of the fee agreement to his clients, in violation of Rule 1.5(b). *See Attorney Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 157, 879 A.2d 58, 79 (2005) (concluding that attorney violated Rule 1.5 by "tak[ing] substantially more fees than agreed upon, [and by] fail[ing] to inform her client of her withdrawal of those additional fees").

MLRPC 1.15(d) requires a lawyer to "deliver promptly to the client . . . any funds that the client . . . is entitled to receive." MLRPC 1.15(e) further requires a lawyer to hold property in trust when there is a dispute as to whom the property belongs until the dispute is resolved. We agree with the hearing judge that Respondent violated Rule 1.15(d) by withholding funds owed Dr. DeJesus's office from payments made on the Bragg account. *See Attorney Grievance Comm'n v. Stern*, 419 Md. 525, 557, 19 A.3d 904, 925 (2011) (concluding that the attorney violated MLRPC 1.15(d) by failing to remit funds to the client after receiving settlement payments). In addition, we agree with the hearing judge that Respondent violated Rule 1.15(e) by not holding the disputed fee in trust, when he knew that Dr. DeJesus's office disputed the fee. *See Attorney Grievance Comm'n v. Calhoun*, 391 Md. 532, 569, 894 A.2d 518, 540 (2006) (stating that where the respondent knew that there was a dispute as to her fees arising from settlement funds, "respondent should have deposited the funds into a proper trust account pending resolution of such dispute").

Finally, we agree with the hearing judge that Respondent's failure to respond to the September 28, 2012 letter from Bar Counsel constitutes a technical violation of MLRPC

8.1(b), and that Respondent's conduct with regard to his mishandling of fees constitutes violations of 8.4(a), as well as conduct prejudicial to the administration of justice in violation of MLRPC 8.4(d). *See Calhoun*, 391 Md. at 570, 894 A.2d at 540.

## Sanction

Neither Petitioner nor Respondent filed exceptions to the hearing judge's findings of fact and conclusions of law. Accordingly, "[t]he only question to be resolved by us is the appropriate sanction." *Attorney Grievance Comm'n v. Palmer*, 417 Md. 185, 205-06, 9 A.3d 37, 49 (2010). In attorney discipline cases, the sanction imposed depends on the facts and circumstances of each case, and in arriving at an appropriate sanction we "consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances." *Attorney Grievance Comm'n v. Paul*, 423 Md. 268, 284, 31 A.3d 512, 522 (2011). Accordingly, the sanctions imposed should be "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 537, 819 A.2d 372, 375 (2003). "It is well settled that our obligation in disciplinary matters is to protect the public and maintain the public's confidence in the legal system rather than to punish the attorney for misconduct." *Attorney Grievance Comm'n v. Nichols*, 405 Md. 207, 217, 950 A.2d 778, 785 (2008) (quoting *Attorney Grievance Comm'n v. Ward*, 394 Md. 1, 32-33, 904 A.2d 477, 496 (2006)).

Petitioner recommends a sanction of indefinite suspension with the right to reapply after six months. Petitioner asserts that this sanction is consistent with prior cases involving

20

multiple violations with regard to multiple clients, including client neglect and mishandling

client funds, such as *Attorney Grievance Commission v. Patterson*, 421 Md. 708, 28 A.3d

1196 (2011). In *Patterson*, the attorney violated rules regarding competence, diligence, and

communication with regard to his representation of multiple clients, in addition to violations

related to the mishandling of his trust account and the charging unreasonable fees. 421 Md.

at 740, 28 A.3d at 1215. Similarly, in *Attorney Grievance Comm'n v. David*, 331 Md. 317,

323, 628 A.2d 178, 181 (1993), we held that an indefinite suspension was the appropriate

sanction for an attorney's "serious neglect and inattention" in his representation of four

clients. In that case, the attorney, much like Respondent in this case, failed to diligently

pursue his clients' claims, failed to appear in court, failed to respond to the clients' attempts

at communication, and finally failed to respond to Bar Counsel's requests for information.

*David*, 331 Md. at 319-23, 628 A.2d at 179-81. The respondent in *David* also failed to return

promptly unearned attorneys' fees after he was discharged from one client matter, and failed

for a period of almost nine months to remit to one client a check received from the client's

insurance company in payment of the client's claims. *Id.*

We have also imposed a sanction of indefinite suspension with the right to reapply

after six months in the case of a conflict of interest in violation of MLRPC 1.7. *See Attorney*

*Grievance Comm'n v. Hines*, 366 Md. 277, 295, 783 A.2d 656, 666 (2001). In *Hines*, we

suspended the respondent indefinitely with the right to reapply after six months where the

respondent, who was an officer and director of a corporation, advised another corporate

21

director regarding a confessed judgment action filed against the corporation by the respondent's firm, to enforce a promissory note held by the respondent's wife. 366 Md. at 291-92, 783 A.2d at 665. Although the conflict in *Hines* involved a different context than that at issue in this case, we were concerned about the seriousness of the offense. We also noted that we were "troubled by the finding that the respondent 'was trying to, and did, 'pull a fast one'' in connection with the last of the loans made by his wife, when the loan document had a signature line for him but the agreement did not include him as obligor." *Hines*, 366 Md. at 294, 783 A.2d at 666.

Respondent asks that we impose a reprimand or finite period of suspension. He argues that the cases cited by Bar Counsel in support of an indefinite suspension with the right to reapply after six months are distinguishable based on the severity of the misconduct in those cases. Respondent asserts that his case bears more resemblance to *Attorney Grievance Comm'n v. Queen*, 407 Md. 556, 967 A.2d 198 (2009), in which we imposed a reprimand, or alternatively, he contends his case is like *Attorney Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 952 A.2d 226 (2008), in which we imposed a ninety day suspension. The disciplinary action in *Ugwuonye*, like the instant case, stemmed from complaints from two former clients. 405 Md. at 355, 952 A.2d at 228. The hearing judge concluded that Ugwuonye violated MLRPC 1.1, 1.3, 1.4, and 8.4(d) with regard to one client, where Ugwuonye initially and timely filed a complaint on behalf of the client, but subsequently failed to respond to requests from the court and from the client and failed to

22

remove himself from the case. *Ugwuonye*, 405 Md. at 366, 952 A.2d at 234-35. With regard to the second client, the hearing judge concluded that Ugwuonye violated MLRPC 1.1, 1.3, 1.5, 1.15, 1.16(d) and 8.4(d) where Ugwuonye "[took] a meritless case, charg[ed] a fee that grossly outweighed the work accomplished, and [engaged in] the overall lack of communication" with the client. *Ugwuonye*, 405 Md. at 367, 952 A.2d at 235. We concluded that a ninety day suspension was appropriate, because "Ugwuonye did not act with dishonest, deceitful, or fraudulent intent, lack[ed] a prior disciplinary record, made after-the-fact efforts to ameliorate the circumstances that led to a number of his violations of the [MLRPC], and was cooperative with Bar Counsel throughout the investigation[.]" *Ugwuonye*, 405 Md. at 375, 952 A.2d at 240. We are mindful that Respondent's conduct in this case lacked dishonesty, fraud, or selfish intent. Nevertheless, we must take into the account the seriousness of the conflict of interest violation and Respondent's neglect, which combined ultimately in the dismissal of the Wares' claims. In addition, we consider the failure to return funds owed to Dr. DeJesus's office for approximately two years and his failure to timely respond to Bar Counsel. These violations were not present in *Ugwuonye*. Thus, we conclude that Respondent's conduct was more severe than that in *Ugwuonye* and is more akin to that in *Patterson* and *David*.

Respondent further asks us to consider the mitigating factors[10] found by the hearing

---

[10] As we stated in *Queen*, the mitigating factors to which we refer include: Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make

(continued...)

23

judge in this case, namely, that Respondent has no prior disciplinary record in his thirty two years of practice, acknowledged his mistakes, expressed sincere remorse, and, on the whole, cooperated with Bar Counsel's investigation. More importantly, Respondent urges us to consider the findings related to his mental state at the time of the misconduct in this case. As found by Judge Cahill, at the time of the misconduct, Respondent was experiencing difficult personal issues and was in "a sort of representational paralysis," but there was "an absence of dishonest or selfish motive."

We recently discussed mitigating factors similar to the ones found in this case in *Attorney Grievance Comm'n v. Brigerman*, __ Md. __ (2014) (Misc. Docket AG No. 16, September Term, 2013) (filed Dec. 18, 2014). In that case, we stated:

> We find significant the hearing judge's finding that [r]espondent was experiencing personal problems, stemming from his divorce and child custody proceedings, during the time of his misconduct. Prior to these difficulties, [r]espondent never had been formally disciplined. Moreover, as found by the hearing judge, much of [r]espondent's misconduct resulted from his personal issues, which took an emotional toll on him during this time, rather than solely a dishonest or selfish motive.

*Brigerman*, slip op. at 20. To be sure, as we stated in *Brigerman*, "[p]ersonal issues, however, do not excuse an attorney's abrogation of his professional duties." *Id*. at 21 (stating

---

(...continued)

> restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

407 Md. at 568, 967 A.2d at 205.

further that "[r]espondent's misconduct was severe—he abandoned [one client], made misrepresentations to [another client] and [Bar Counsel], and failed utterly to cooperate with [Bar Counsel]'s investigation"). In that case, although Bar Counsel sought disbarment, we held that under the totality of the circumstances, considering the mitigating factors and despite the respondent's mishandling of client funds, misrepresentations to clients and Bar Counsel in violation of MLRPC 8.4(c), and failure to respond to no less than fourteen letters from Bar Counsel, the appropriate sanction was less than disbarment and we ordered an indefinite suspension. *Id.*

In this case, Respondent's conduct, particularly with regard to his neglect and inattention of the Ware matter, was severe. Although he promptly secured PIP benefits for the Wares, Respondent subsequently failed to act competently and diligently in representing them and in pursuing their claims. He created a conflict of interest when he agreed to represent both Mr. and Mrs. Ware at the outset, knowing that as a result of the automobile accident, they had competing interests. Respondent then compounded the issue when he filed suit on behalf of Mr. Ware against Mrs. Ware, and subsequently failed to resolve the conflict by not advising the Wares to seek alternate counsel. As we noted, the conflict was not waivable and, along with Respondent's failure to respond to discovery requests in the BH Motors case, ultimately led to the dismissal of the Wares' claims. Respondent further failed to respond to communications from the Wares or to keep them updated about the status of their cases. This conduct exemplifies the kind of "serious neglect and inattention" that we

25

have held warrants an indefinite suspension. *David*, 331 Md. at 323, 628 A.2d at 181.  In addition, with regard to Dr. DeJesus's complaint, Respondent charged an unreasonable fee and improperly withheld funds owed to Dr. DeJesus.  Respondent failed to place the disputed fee into a trust account pending resolution of the dispute.  After the hearing date but before the date of oral argument in this case, Respondent returned the withheld funds to Dr. DeJesus.  Those funds had been wrongly withheld from the client for a period of approximately two years.  Finally, Respondent failed on multiple instances to respond to communications from Bar Counsel.  Considering the totality of the circumstances, we conclude that the appropriate sanction for Respondent's misconduct is an indefinite suspension with the right to reapply after six months.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST KEVIN TRENT OLSZEWSKI.**